Good morning. May it please the court? My name is Eberhardt Garrison. I'm here on behalf of Joseph Greffer, defendant, appellate, in this matter. I'm sure your honors are well read on the briefs, so I'll just give a brief history of the facts. As your honors are aware, this case started as far back as 2002 when plaintiffs filed an original petition for damages, naming more than 1,800 plaintiffs against my client, Joseph Greffer, and his siblings. They also included claims against pipe cleaners and oil companies for exposure to radiation. Numerous pipe yards in Harvey, Louisiana area. As far as the background of the case concerning Greffer, is the landowner on which a lot of this allegedly occurred? Yes. He got a settlement or something? I saw a $100 million figure. What's that about? The Greffer family, four siblings, were originally plaintiffs in a case called Greffer v. Alphateck that began in about 1997. One of the landowners, one of numerous landowners in that Harvey area, it's a strategic property located along the Harvey Canal, but there's numerous landowners and there's up to five different pipe cleaning companies. And the Greffers sued Exxon and the pipe cleaners, and they did obtain a jury award that was later reduced onto a punitive damage award and compensatory damages. Let me just sidetrack you. I want to make sure what that was. Yes, sir. So as a result, resulting from that case, numerous of the neighbors sued not only the oil companies that the Greffers were successful in suing, including the parties who were responsible for contaminating or allegedly releasing hazards or toxins in that area. All of the neighbors sued not only the oil companies and the pipe cleaning companies, but also included the Greffers and the other landowners as defendants. So this case initiated in 2002. It was the first amended supplemental petition filed in January of 2004, which added more plaintiffs, more oil companies, more landowners. January 2015, plaintiffs filed a second amending and supplemental petition attempting to add more details regarding punitive damages. The key amended petition, and one of the main reasons we're here today, is on August 12, 2015, the plaintiffs filed a third amending and supplemental petition. In that petition, they asserted for the first time ever 630 individual brand new wrongful death claims. So how do we know that it's sides to the wrongful death civil code provision? And I'm, unlike you and unlike one of my colleagues here, a Louisiana law expert, I don't get that anything's going on here from the language about substitution and the estates of or represented by certain people. I don't get any addition of new claims from that. Is this how wrongful death is pled in Louisiana in a current lawsuit and you're adding new plaintiffs? Where does this come from? Well, Your Honor, in the third amending and supplemental petition, they do cite 2315.2. As you know, that's the wrongful death statute. But how would you know in any other way that this has anything to do with wrongful death? Because they listed the 2315.2 beneficiaries for the decedent and they cited 2315.2. Additionally, I would respectfully suggest to Your Honor that the plaintiffs haven't contested. They did in the district court. I looked for that. And it seems to me they never took issue with that. They instead, federal district court, and that was in your motion for removal, petition for removal. But they are contesting it here, it seems to me, in their brief, whatever that means by waiting until now. Did the district judge, Judge Morgan, accept that that's what this was? That would be my interpretation of what happened. And respectfully, I don't see where the plaintiffs in this matter, even at the Fifth Circuit level, have tried to backtrack and say we did not assert wrongful death claims. Wasn't that merely a substitution of parties? There was no finding by Judge Morgan. Well, that's a good point, Your Honor, good question. And that's one of the problems. That's why I believe that Judge Morgan erred is because in her order and reasons, she refers to substitution of the survivors. But the fact is— Maybe that's what it is. Yeah. And wouldn't we then just affirm? No, I don't think so. If it's substituted— Well, she wants us to reverse. I know, but I know it's not a friendly question. No, it— But if it's substitution— I'm happy to answer. —under Louisiana Code 801, then you lose. To the extent Your Honors are suggesting that plaintiffs have effectively pled a survival claim, assuming it is vague, as you're suggesting, or maybe it doesn't assert it, why would it be any different for the survival claim or the wrongful death claim? Because it's no new claim. It's not a new claim that would trigger. You have to have a new independent cause of action to possibly— I mean, whether you went on that idea, that's not yet decided in this circuit to begin with. But before we even get there, if there was no new independent claim added on the third amended complaint, you lose. Perhaps, Your Honor. You're the one who will decide that. But I would respond to your question and the other judges' question. I believe they refer to 2315.2. They signed that petition. We know what their obligations are when they sign a petition. They included reference to 2315.2. They included reference to the 2315.2 beneficiaries. And I have not seen in the record where they have stated or tried to backtrack off of that allegation of wrongful death claims. I don't— They're asserting, but it looks to me like a substitution. Do you have any case law in Louisiana that has challenged whether something wrongful death has been properly pled that would help us on this? Not off the top of my head, Your Honor. Not in your briefs. Right. Okay. But, again, I can—they pled it. They haven't backed off of it respectfully. I haven't seen where they have said— We'll see what they say this morning. Well, we will. Well, assuming, Arguendo, that you're correct and it was an amended complaint raising wrongful death, let's proceed under that. Okay. That's probably what you want to talk about. It's my position that there were, in fact, 630 brand-new wrongful death claims, 513 of which were completely new, plaintiffs who did not have their own preexisting claim. There were 630. 117 of those had their own preexisting claim, separate and independent. So we removed—Joseph Greffa removed this pursuant to CAFA. We know the fundamentals. Over 100 persons, minimal diversity, 5 million-plus amount of controversy. As we know, Judge Morgan remanded. And in her order and reasons, she did refer to the substitution of the survivors for the now-deceased original plaintiffs. She also said the claims asserted therein relate back to the original petition for damages filed in 2002 and concluded, therefore, there was no commencement. Commencement being the buzzword pursuant to Section 9 of CAFA. Importantly, this circuit in Brough and Abshire has clearly stated that in determining when a lawsuit is commenced, we need to look to state law. In looking at state law, the Louisiana Supreme Court, in the Walls decision, 1999, said that a wrongful death claim is independent, distinct, and non-derivative. It arises even in the absence of a viable personal injury. The wrongful death claim cannot be a substitution. By its definition, I suspect that's what you all are alluding to with your questions. But I can only look at the petition, look at the words that are written in their third admitting and supplemental petition and interpret that. I filed a notice of remover. They moved to remand. They never denied that these were all wrongful death claims. Judge Morgan ends up remanding the case. I file a petition for permission to appeal with this court. They oppose. They never contest. They never retract the fact that those were 630 new wrongful death claims. This court grants the permission for – Let me ask. Are you arguing waiver that this issue of whether this is actually pled or not has been waived? I'm sorry, repeat that. Are you suggesting that the plaintiffs have waived the possibility that this complaint petition doesn't allege wrongful death claims? I don't think they've waived it, but in terms of interpreting the words that are on the paper that they have submitted in the petition and all the responsive follow-up pleadings that I have suggested, even after I, on behalf of Joseph Greffer, said these are all wrongful death claims, they have never challenged that. I'm not trying to get you back on that point. I know we're moving on. All right. So the third amendment petition does refer to the substitution. I believe the wrongful claims, wrongful death claims were asserted. I believe that's where Judge Morgan erred when she said substitute, and I believe that the Walsh decision supports my argument on that point. Okay. Well, assuming that you're right, that new claims were added, the Fifth Circuit rules that an action in Louisiana is commenced only when the original petition is filed. What authority says that adding new plaintiffs commences a new lawsuit? That's the question. Exactly. That's what give me some authority. That is the question. Give us some authority. I would suggest to you that the Brough decision, and we know Brough clearly supports the proposition that adding a new defendant provides the commencement of a new action and, thus, it is removable, even when you had the original petition that was filed before the enactment of CAFA. I believe Brough supports it. Brough expressly states that they do not limit their decision to the adding of defendants. If you look at footnote 16 on page 808, the Brough court says, we do not decide when or whether the addition of a new claim to a pre-CAFA case provides a new removal window. Further, when you look at the cases that Brough relies upon, they cite Knutson v. Liberty Mutual, Seventh Circuit 2005, and Schorsch, a Seventh Circuit 2005 case. Not only do they cite these cases, but they rely upon these cases. When you look closely at those decisions, the Brough court relied upon those because an element of both of those decisions is, in Knutson it says the addition of a new defendant is a distinction, sufficiently distinct, where a court would treat it as independent in the commencement of a new case. The Schorsch decision specifically says a defendant added after February 18th could remove because suit against it would have been commenced after the effective date. But those decisions are broader in scope. The Brough court only had to rely upon those small portions of those decisions because that was specific to the facts of the Brough case. But when you look at Knutson and when you look at Schorsch, real quick I'll quote from Knutson 1, the first one. As we have already hinted, however, a new claim for relief is a new claim for relief, open parentheses, a new cause of action in state practice, close parentheses. That's the first element, a new claim for relief. Second, the addition of a new defendant. Or thirdly, Knutson says, or any other steps sufficiently distinct that courts would treat it as independent for limitations purposes could well commence a new piece of litigation. This is the decision relied upon Brough. It is Seventh Circuit. But this court, not this panel, but this court affirmed . . . But they weren't . . . and they specifically set this issue aside. They did not. Well, they didn't have to rule on it. They didn't have to rule on it. And so . . . They didn't have to. So is your position that there's nothing that tells us what we have to do and we can do whatever we want and you want us to do what you want? No. I believe law provides the answer. And Judge Clement, I believe you were on the panel in the Abshire case. And as you recall, the Abshire court went through this whole analysis, cited Brough. And in the Abshire case . . . In the Abshire case, the court specifically said that. They said they reviewed the Knutson decision. They reviewed the Shor's decision. They considered these cases. I don't understand the point you're saying. The fact that Abshire considered other authorities doesn't mean that Abshire says that we're supposed to follow those authorities in this context. Well, Your Honor . . . So I don't understand at all . . . Abshire left it open. I believe it's an open issue. Right. And so there's nothing that would bind us one way or the other. The statute doesn't say something particularly. The other circuits have found it one particular way. But there's nothing. There's no statutory text or something that would be reclusive on us. I do believe there is, respectfully.  Well, then tell us that. Let's look at the Brough decision. We know it involved the addition of a new defendant. However, when you look at page 807 of the Brough decision, it says the addition of defendants changes the character of the litigation so as to make it substantially a new suit. This permits removal even absent any discussion of relation back. By analogy, that applies in this case because of the Walls decision. These are absolutely new suits. They are new suits. They're not new defendants. They're not new defendants. Right. And that's what the case is talking about, adding new defendants. But I do believe we can look at cases and consider the rationales and extend them by analogy. Additionally, I would refer your honors to the Seventh Circuit cases that I cited. Obviously, they're not controlling, but I believe they're certainly persuasive. If you look at these and if you look at Shor's, if you look at prime care, those cases specifically refer to not only the adding of defendants but the adding of claims. But finally, to respond to that, if we look to fundamentally just the statute itself, well, not the statute but the act, Section 9 of CAFA states the amendments made by this act shall apply. It says shall apply to any civil action commenced on or after February 18th, 2005, the date of enactment. Let's put aside all the cases for a second and just look at the statutory authority. I don't think there's any question that these wrongful deaths, assuming your honors agree that wrongful death claims were asserted, they are commencement of new actions. They are commencement. For example, in a wrongful death case, when you file, there are prescription issues as distinguished from a survival claim. Walls of Louisiana Supreme Court tells us that. These are new actions. All right, you have your red light, but you save time for rebuttal. Yes, ma'am. Thank you. Mr. Wood. May it please the court. My name is Michael LaVord, and I'm here on behalf of the plaintiff's appellate in this case. So just before we get to the roadmap about what I'm going to discuss, I just want to quote from our brief in this—our principal brief in this case. This is page 17. The third petition was nothing more than a method of effectuating the correct depiction of the plaintiff's individual procedural capacities. As such, the act of filing the third amending and supplemental petition was insufficient to constitute the commencement of wholly and completely new civil action to an existing proceeding initiated 13 years prior. So is that your denial that they were wrongful death claims being asserted under 2315? That is correct. The only reference to a wrongful death claim is the site in the caption or the heading of the pleading that says notice of 2315.1 and 2315.2 beneficiaries. So is that a typo? Why was it in there? It can be designated as a typo or an error, but there was no assertion of. If you look at the text of the pleading, there's no allegation of a relation of any of these 630 new plaintiffs to the original plaintiff that had passed away. There's no listing of any species of damages like loss of consortium damages or anything like that or any factual allegations that would point you to the fact that there is a wrongful death claim asserted by these new 630 plaintiffs. There's only the basis of a survival plan because it alleges that they're heirs. Well, counsel, looking at Judge Morgan's opinion, she quotes the allegation made by the defendants that those are added. She never takes issue with it, and I looked at your briefing in the district court. You had the benefit of the petition to remand where one of the first things asserted is exactly what we're talking about, that all these wrongful death claims were made. You never contest that. Judge Morgan never rejects it, but she does make the ruling that she does that in a way almost seems to be not addressing wrongful death claims. Why did you not dispute this below? All you discussed in the district court were all these other issues that Judge Morgan never got to, such as local controversy, whether it's a master class action, etc. Looking at the initial removal, my impression of the entire action was that it was a substitution. That was based on substitution. Well, how can you? The second page of the motion to petition to remove says we are adding whatever number it is, wrongful death claims. Well, that is incorrect. Not we. You. Then that would be our incorrect interpretation of the pleadings. We now are bringing forth the argument. I think the pleadings clearly suggest— It would have been good if this had been hammered out in the district court as a whole and saying proceed. We agree that it should have been ferreted out in the district court, and it was not. But Judge Morgan already made the finding that it was a substitution. So whether or not we put forth that argument or not, she clearly looked at the pleadings and gathered the fact that it was a substitution, clearly because of the points that I made earlier, which is there's no specific allegations of relation to the prior plaintiffs, and there's no designation of species of injury or any sort of damages. Now looking at, as a whole, whether or not you look at Brough and Apshire, you really need to address whether or not there are even new plaintiffs and new claims. And that's the first issue that we look at, and we've already discussed it, but we can now move on to the applicability of CAFA. So it's kind of a misnomer in this case whether the Class Action Fairness Act is retroactive or not. We're not really talking about retroactivity. The notion that we need to evaluate is that a suit can only be filed originally once, but it can commence several times. And so CAFA only applies to suits that commence after February 2005, even though it was originally filed prior to 2005. So there's no retroactive effect of CAFA. It only applies prospectively to actions that have commenced, even though for the second time or third time or fourth time, to those after February 2005. So we first look at the default rule of Brough that Louisiana only recognizes the commencement of a lawsuit whenever you either initially file it or add a new defendant. And that is not the case here. And so what defendants are trying to do is they're trying to set up a paradigm between Brough and Apshire as if it were linear, as if on one side you had Brough in which CAFA is applicable to the addition of new defendants, and on the other side you have Apshire where if you just simply assert class certification definition and then join a claim for attorney's fees, then it's not applicable. That doesn't satisfy the criteria in that this case somehow shoehorned fits in the middle because it does somehow affect the existing litigation. Well, Apshire identifies possible other ways in which a new action could be commenced, correct? It's not just the ruling by Judge Wiener, obviously Judge Clement held that that was not sufficient, but at least suggested that other cases had recognized adding of claims that do not relate back or, in a somewhat different way, adding a new claim that dramatically changed the lawsuit. So that's at least there. And it wasn't, it wouldn't have been the facts of the case or vindictive if they said otherwise, but it wasn't rejected. So it's at least on the table. So our operating premise right now is that these wrongful death claims are here. We may not accept that. And if so, why are those not either new claims that dramatically changed the suit against Griffer or that they simply don't relate back under Louisiana law? Well, I think we first, claims would first take issue with the paradigm that you set up. Well, that's where we are on the argument. If these new claims weren't made, case over. We accept that fact. We can operate under that premise. But Abshire's opinion clearly designates several times that they're not going to engage in the analysis in a practical way. They already made their decision, and then for three or four pages they explore the existing case law of other circuits like the 7th, 10th, and 8th, of how they treat new claims and new plaintiffs in the scope of whether or not CAFA is applicable. And specifically, the court in Abshire says we need not consider choosing between these two options on the fact of this case. However, as Abshire's 9th Amendment complaint relates back to the original complaint or at least to one or more brief CAFA complaints such as the 8th Amendment version. And then goes on to say we begin our analysis by noting that the relation back approach to commencement that other circuits employ to the extent that it is ever analytically relevant is particularly unilluminating in this case. In Abshire. It was unilluminating in Abshire. So I'm saying work with me on this. If that is a principle that we are considering, how does it apply in this case? If it is the paradigm that we're considering, and we can accept that, then you would analyze it under the relation back test. And I think the main focus of that test is going to be the third prong, which is whether or not the defendants had notice of the claim. Because we already know that they arise out of the same transaction of occurrence, and everything else is the same pretty much. But the third prong about notice of the defendants, that would kind of be the focus. Is there Louisiana law on whether a wrongful death claim relates back to the bodily injury claim of the predecessor? There is Louisiana law on it in that it would not. I think it's kind of mixed. If there's some particular case that you're talking about, I can address that. I'm asking about the general issue. I'm not asking about a particular case. Does Louisiana law have indications, settled law, that a wrongful death claim is, in fact, a claim that does not relate back to the bodily injury claim of the person who died? No, I don't think it's settled. I haven't found anything to suggest that it's settled. I think that it's analyzed under the four-prong framework of relation back for each individual case. So it's not wrongful death claims always relate back to the original complaint or they always don't. I mean whenever you have a case like this where you have an inherently local case in controversy that happened in Harbin, Louisiana, and you have just a procedural substitution of these new plaintiffs, and even if you were to think that they worded 638 wholly new wrongful death claims, it's tough to even analyze it because there's no assertion of any underlying facts in the petition. So it's hard to say whether or not it relates back because you don't know what the wrongful death claims are really about because there's no specifics within the third supplemental amending petition. So how would you decide this case? Would you decide this case that it was substitution of parties and that we don't even need to analyze it or assuming arguendo that it's not substitution of parties, we shouldn't apply the relation back doctrine, and therefore even if we did, the factors don't fade? How would you go through this? So I basically treat it like exit ramps, right? So the first exit ramp is it's substitution, not 638 wholly new plaintiffs. So you can get off there. You can stop. Okay, let's say we pass that one up. We go to the next exit ramp where you are faced with broad and that one exception to the default rule that complaint is only initiated or only commits upon the original filing. And so you have to say, okay, do I want to take this exit ramp and respect broad or do I want to keep going? Do I want to extend it? So broad doesn't apply, therefore we stop, period. You can. You can get off there. You can stop there. And then if you keep going, do you relation back from other circuits? Or maybe there's something in between. Yeah, so that would be the second exit. So the third exit would be basically looking at whether you've got to decide whether or not Abshire and broad are on a linear paradigm or whether or not they're categories. Because if they're categories, then we fall into the Abshire category, which is new plaintiff, new claim, does not represent a new commencement under CAFA. And in broad, a new defendant does. So if it's a categorical paradigm, then you can get off at that exit ramp because we clearly fall within Abshire. But if you decide that it's a linear paradigm and that we somehow fit in the middle, then you can start to analyze under relation back, but you're not even bound to relation back. I mean the only reference, the only reason why relation back is even talked about is that plaintiffs in broad, I think their third argument in that case was basically relation back, and that's the only reason why it was addressed by the broad court. And in Abshire, it was only addressed tangentially because it looked to other circuits, like I mentioned, the seventh, eighth, and tenth. And a sticking point about Abshire is that the court never even decided which law to apply. It didn't choose to apply Louisiana or federal law. It analyzed under both. Common sense in just the history of this kind of litigation would tell you that Louisiana law would be appropriate, but Abshire didn't even make that decision. So whenever you get to that step of analyzing under relation back, you don't even have to use that methodology. You can use whatever methodology you want. I mean there's no binding precedent for using it. It's just an option that— Well, then as a policy matter, assuming argument of the policy matters, would we want to allow this to relate back? Would we want it to commence a new action? It seems like the reason that you have it for defendants, the rule, is that enables you to remove once you become your—it gives you your shot at removal. And that's not—conversely, that's not true for plaintiffs. This is not necessarily an unfriendly question. So essentially the whole idea of the new basis—and this is kind of getting a little convoluted because I think of them as two separate analysis, whether or not CAF is applicable and then whether or not you meet 1446B. Those are two separate things, and so we're kind of mixing them. But to that point, the policy arguments would be that whenever you add a new defendant, if you don't allow them the ability to remove, then they never have one, ever. Throughout the entire litigation, for the duration of it, they never have one, which makes them unlike the original defendants, which had their first opportunity. But—and so that's why—and this is addressed by Apshire and I think Broad a little bit. Their inherent notice and due process concerns there. If you simply don't allow a defendant to seek the federal forum for relief, that is not okay. And that is why 1446B clearly says if there's a new basis for removal, you're given another opportunity to remove. So looking at this case, why that policy shouldn't be extended. You have to analyze whether or not those same policy concerns are inherent in this case. And so whether or not the defendant had notice of these types of claims, whether or not they had an opportunity to remove. Were there already wrongful death claims in this case? It wouldn't appear that there would be because thinking that this is a species of wrongful death claim, right? It wouldn't appear that there are. I said were there already. I mean in the first or the second complaint, first or second amendment, were there identified wrongful death claims? No, Your Honor, there weren't. But there were designations of a certain claim being represented by the estate. And so if you take the argument that we have now that just listing the estate instead of individual heirs represents a survival and a wrongful death claim, then yes, I guess there would be wrongful death claims, but I don't think there's any credence to that. But it's not new damages. Like you said, these new people, they don't have loss of consortium and they don't have independent injuries and damages, right? They just have derivative. If the original person was physically harmed, that's their pot of damages, right? So that's not an unfriendly question either. No, it's not, but that's why it's not a wrongful death claim. I mean wrongful death claims. That's why it's not a wrongful death claim, but it's also why it's not prejudicial to the defendants to not have this right to go start over again. Because there's no new damages that they wouldn't have been on alert of that this is making them aware of. Oh my goodness, this is now these other 12 categories of damages for different people. It's the same injury and the same damage. I think you're exactly right, and I think this goes to another point that we were talking about earlier, is that Louisiana law does have case law on the fact that wrongful death claims are not necessarily derivative of the original claims, that they're a new, separate, and independent claim. But in this case, there are no allegations of new claims, of new circumstances of damages. It's the same thing, it's the same facts, and it's essentially the same plainness. You said the same facts. There are no new facts, alas, there is no new identification of the claim. I would think wrongful death claim, Mississippi, which I know a little bit more about, but maybe not always without error, wrongful death claim is a personal claim of the heir, and it's damages unrelated to the damages of the person who died. It doesn't necessarily answer a relation back or whatever else, but it's certainly a new claim with new evidence. And unless Louisiana has very obscure pleading permissions, this very small amount of allegations is sufficient. It does seem odd to me that a wrongful death claim could be pled the way this was pled, and you certainly assert that it cannot be. It would be really odd, and it's ripe for a 12p6 motion after we finish this. If there would be a decision that we are going to receive these 630 new plaintiffs, then we have to amend again. There's no way we can survive any sort of motion practice with these allegations. There are none, and it actually creates an interesting issue because if on one hand we have a prior Fifth Circuit decision that says we do have wrongful death claims and then we have a 12b6 that we're now facing and we lose that 12b6, I'm not sure how those would be congruent with each other. It really just comes down to whether or not you look at the third supplemental amending petition and decide that there are valid wrongful death claims asserted. If they win, they could end up with you making a bunch more claims and damages if they win. It's an interesting setup we have in that the defense attorneys are trying to give us plaintiffs, but we're not alleging that. We didn't allege that in the third petition, and I think that's the first exit ramp, and that's the correct exit ramp. As we previously discussed, there are several more, and there is no new basis of removal in this case. This amendment, even if it is wrongful death claims, didn't suddenly make it removable under CAFA. It didn't make all of the considerations of CAFA suddenly met. They were either met or they weren't previously, so it still needs to be analyzed under 1446. That's all the time I have. I can answer any other questions. I think we've got it. Thank you, Mr. McGord. Mr. Garrison, you have some rebuttal time. Your Honors, fundamentally, the Greffers and all other defendants are new defendants. For each and every one of those 513 brand new wrongful death claimants, we are new defendants. So to the extent you question what is the authority, I would suggest that Breau applies in this case. If you think about it, we are new defendants. Everybody is. This case is so different from the Abshire decision. In the Abshire case, as you recall, the amended petition at issue there added a class allegations, and the very definition of those class allegations was every plaintiff who had previously filed a suit. So when we think about the significance of the Abshire decision, we have to think about that. That decision was obvious. I think I heard counsel for plaintiffs refer to page 17, where they talked about page 17 of their brief, that that was a denial that wrongful death claims were made. I'm not sure, but Mr. Laborde said something about the petition was nothing more than a method of effectuating the correct depiction of plaintiff's individual procedural capacities. I'm not sure what that means, frankly, but what I know it is not is a denial that wrongful death claims were made. The procedural capacity of the plaintiffs. That seems like that's exactly saying substitution. They named an attorney, signed that third amending supplemental petition in light of the Rule 11 or Rule 863 obligations. They chose to include the wrongful death statute, and they signed that petition, and they haven't denied it since. So are you saying that there are going to be all these new claims for all the losses of the new plaintiffs? They are not there now. I'm not saying they're valid, but I would say they have asserted 630 new wrongful death claims. I just have a problem with your initial statement here, where you say that there are new defendants as to these claims. Well, the claims are that people suffered property damage or physical injury, and it's still the exact same thing. The underlying people either suffered property damage or physical injury. There's no new claim. That is a survival claim, right? Yeah, that's what this says. Respectfully, the third amendment— Property damage or physical injury from the original plaintiffs. They don't have losses in consortium, which is the easiest one to think of. That's why I'm only using that one. Your Honor, if the petition is vague, that might be. But they put it in writing, and somebody signed it, and they haven't denied it in all pleadings before the district court and presently. Well, today Mr. Laborde said it was either an error or a typo, the reference to 2315. Well, I'm not so sure about that, respectfully, but I don't know how that's a typo. I don't know if it's true or not, but that's what he said. I mean, maybe if you only had 2315.2 and you said, oh, I meant to be .1, but when you write and somebody types and people read drafts and it says 2315.1 and 2315.2, respectfully, I don't—that doesn't make sense to me. Additionally, I'll refer, Your Honors, to Judge Morgan's order and reasons on page 5, where she says— she refers to plaintiff's cite Louisiana Civil Code articles 2315.1 and 2315.2, which govern survival and wrongful death actions. That's what Judge Morgan wrote. We've had subsequent pleadings, petition for permission to appeal, the opposition, the brief. They've never retracted. They've never backed off of that, respectfully. Additionally, I think it's important to emphasize in the Broad decision— and again, I suggest that BRO does stand for the proposition that there was a commencement of new actions in this case. We look at page 807 of the BRO decision. I cited it earlier, but I want to point out the follow-up paragraph. The addition of defendants changes the character of the litigation so as to make it substantially a new suit, because we explain the addition of new defendants commences the lawsuit as to it. This permits removal even absent any discussion of relation back. The BRO court then says this distinction for new defendants as opposed to new claims is a distinction without a difference. I believe the BRO court right there is telling us that if you have a situation where an amendment, post-enactment of TAFAA amendment, changes the character of the litigation so as to make it substantially a new suit, it's a new commencement, and a defendant then has 30 days to timely remove. All right. We understand what you're saying. Thank you. Thank you. All right. That concludes our docket for today, so we'll be in recess.